IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Submitted On Brief May 18, 2005

## IN RE: M.L.D.

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-03-0622-2     Arnold B. Goldin, Chancellor**

---

### No. W2004-02695-COA-R3-PT - Filed June 8, 2005

---

Petitioners, Mother and her husband, brought a petition to terminate Father's parental rights on the grounds of abandonment. The trial court found that clear and convincing evidence did not support a finding a willful abandonment and dismissed the petition. We affirm.

**Tenn. R. App. P. Appeal as of Right; Judgment of the Chancery Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S. and HOLLY M. KIRBY, J., joined.

Larry E. Parrish, Memphis, Tennessee, for the appellants, J.M.T. and D.C.T.

William T. Winchester, Memphis, Tennessee, for the appellee, M.A.D.

### OPINION

This is a parental rights termination case. In April 2003, J.M.T. ("Mother"), the natural mother of M.L.D., a minor child born June 1998 in Knoxville, and her husband, D.C.T ("Husband;" collectively, "Petitioners") filed a petition in the Chancery Court of Shelby County to terminate the parental rights of M.A.D. ("Father"), M.L.D.'s natural father, and for Husband to adopt M.L.D. In their petition, Petitioners alleged that Husband had acquired custody of M.L.D. upon his marriage to Mother in August 2002 and that M.L.D. had resided continuously in Petioners' home since that date. They further alleged that Father was a resident of Florida and that he had willfully abandoned M.L.D. for more than four consecutive months preceding the petition. They also petitioned the court to legally change the surname of M.L.D. from Father's surname to Husband's.

Father filed a petition for specific visitation on May 5, 2003, and an answer on May 6, 2003. In his petition for visitation, Father asserted that he was the biological father of M.L.D.; that he and Mother had entered into a written agreement that he would have custody of M.L.D. one-half the time; and that he had exercised his right to custody until he moved to Florida and Mother denied

visitation despite Father's willingness to assume all costs thereof. Father further asserted that Mother moved abruptly a number of times and willfully refused to allow him to visit or have contact with M.L.D. He alleged that M.L.D.'s paternal and maternal grandmothers have maintained contact with each other, and that he has only been able to speak to M.L.D. on the telephone when her paternal grandmother learns that M.L.D. is visiting her maternal grandmother and Father telephones at the maternal grandmother's home. Father asserted that M.L.D.'s maternal grandmother denied information about Mother's whereabouts or contact information. Father further asserted he had not been allowed contact with M.L.D. since February 2001, and that he had not spoken to M.L.D. since June 2002. In his answer, Father denied that he had willfully abandoned M.L.D. and asserted he had not known her whereabouts since Mother moved from East Tennessee without his knowledge.

Petitioners responded to Father's petition on May 16, 2003. In their response, they admitted Father was the biological father of M.L.D. and that Mother and Father had entered into a written agreement concerning custody and visitation upon their separation in 1999. They asserted, however, that Father had visited M.L.D. only sporadically and that he had failed to adhere to the terms of the agreement. They further asserted that Mother had not secreted the child and denied that M.L.D.'s grandmothers maintain contact. Mother also asserted that Father resided with his mother in Virginia before moving to Florida; that Mother brought M.L.D. to Virginia to visit for Christmas shortly after Mother and Father separated; and that Father did not "show-up" in Virginia but asked Mother to allow the child to remain in Virginia with his mother for one week so that he could visit there. Mother further asserted that she agreed to allow M.L.D. to remain in Virginia for one week and that Father took M.L.D. to Florida and refused to return her to Mother. She asserted that she spent five weeks attempting to get M.L.D. back until an F.B.I. agent finally convinced Father to return M.L.D. She submitted Father then returned M.L.D. to Virginia and that Father had not attempted to make further contact. Mother also asserted she did not move secretly; that her telephone number is available in the public telephone book; that she did not deny Father access to M.L.D.; and that Father made no attempt to visit M.L.D.

Following a hearing on August 9 and 10, 2004, and based on the record as a whole, the trial court determined that Petitioners had failed to prove by clear and convincing evidence that Father had willfully abandoned M.L.D. It accordingly refused to terminate Father's parental rights, ordered Father to pay child support, ordered the guardian ad litem to prepare a parenting plan, and ordered visitation. The trial court entered a consent order allowing Petitioners to substitute counsel and, on September 24, 2004, Petitioners filed a petition to alter or amend the judgment pursuant to Rule 59.04 of the Tennessee Rules of Civil Procedure. The trial court denied the petition on November 10, 2004, and Petitioners filed a timely notice of appeal to this Court. We affirm.

### Issues Presented

Petitioners have raised eighteen issues for our review. The issue as we perceive it is whether the trial court erred by refusing to terminate Father's parental rights based on abandonment where Father and Mother were not married at the time of M.L.D.'s birth and where Father had not visited

or supported M.L.D. in over four months preceding the filing of the petition. Additionally, Father requests attorneys fees on appeal.

### *Standard of Review*

Our standard of review of a trial court sitting without a jury is *de novo* upon the record. *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn.1995). There is a presumption of correctness as to the trial court's findings of fact, unless the preponderance of evidence is otherwise. Tenn. R. App. P. 13(d). When no transcript or statement of the evidence is included in the record on appeal, we conclusively presume that the findings of fact made by the trial court are supported by the evidence and are correct. *J.C. Bradford & Co. v. Martin Constr. Co.*, 576 S.W.2d 586, 587 (Tenn. 1979). However, no presumption of correctness attaches to a trial court's conclusions on issues of law. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn.2000); Tenn. R. App. P. 13(d).

Tennessee Code Annotated § 36-1-113 governs the termination of parental rights. The code provides, in pertinent part:

> (c) Termination of parental or guardianship rights must be based upon:
> (1) A finding by the court by clear and convincing evidence that the grounds for termination or parental or guardianship rights have been established; and
> (2) That termination of the parent's or guardian's rights is in the best interests of the child.

Tenn. Code Ann. § 36-1-113(c)(2001). This section also provides the grounds on which parental rights may be terminated. The existence of any statutory basis for termination of parental rights will support the trial court's decision to terminate those rights. *In re C.W.W.,* 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000).

A finding of grounds to terminate parental rights must be supported by clear and convincing evidence. *Id.* at 474. The "clear and convincing evidence" standard is more exacting than the "preponderance of the evidence" standard, although it does not demand the certainty required by the "beyond a reasonable doubt" standard. *Id.* To be clear and convincing, the evidence must eliminate any substantial doubt and produce in the fact-finder's mind a firm conviction as to the truth. *Id.* Insofar as the trial court's determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent evidence of clear and convincing evidence to the contrary. *See Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

### *Analysis*

We begin our analysis by noting that the appellant has the burden to demonstrate that the evidence preponderates against the judgment of the trial court. *Capital City Bank v. Baker*, 442 S.W.2d 259, 266 (Tenn. Ct. App. 1969). Additionally, under Rule 24 of the Tennessee Rules of Appellate Procedure, the appellant has the duty to prepare the record which conveys a fair, accurate,

and complete account of what transpired in the trial court regarding the issues which form the basis of the appeal. The appellant also has the burden to provide this Court with a transcript of the evidence or a statement of the evidence from which we can determine whether the evidence preponderates for or against the findings of the trial court. *Coakley v. Daniels*, 840 S.W.2d 367, 370 (Tenn. Ct. App. 1992). In the absence of a transcript or statement of the evidence, we conclusively presume that the findings of fact made by the trial court are supported by the evidence and are correct. *J.C. Bradford & Co. v. Martin Constr. Co.*, 576 S.W.2d 586, 587 (Tenn. 1979). In the present case, Petitioners have filed no transcript or statement of the evidence in this Court.[1] Accordingly, we presume the findings of the trial court to be correct.

Second, we note that Petitioners devote considerable attention in their brief to this Court to the question of whether Father is, in fact, the legal parent of M.L.D. where Father and Mother were not married at the time of M.L.D.'s birth or at any time thereafter.[2] A party may not raise an issue for the first time upon appeal. *Cantrell v. Walker Die Casting, Inc.*, 121 S.W.3d 391, 396 (Tenn. Ct. App. 2003). Upon review of the technical record, we find the issue whether Father is M.L.D.'s legal parent was not raised during the course of proceedings before the trial court but was raised for the first time in Petitioners's Rule 59 motion to alter or amend the judgment. The trial court denied this motion.

The purpose of a Rule 59.04 motion to alter or amend a judgment is to provide the trial court with an opportunity to correct errors before the judgment becomes final. *Bradley v. McLeod*, 984 S.W.2d 929, 933 (Tenn. Ct. App. 1998)(overruled in part on other grounds by *Harris v. Chern*, 33 S.W.3d 741 (Tenn. 2000)). The motion should be granted when the controlling law changes before the judgment becomes final; when previously unavailable evidence becomes available; or to correct a clear error of law or to prevent injustice. *Id.* A Rule 59 motion should not be used to raise or present new, previously untried or unasserted theories or legal arguments. *Local Union 760 of Intern. Broth. of Elec. Workers v. City of Harriman*, No. E2000-00367-COA-R3CV, 2000 WL 1801856, at *4 (Tenn. Ct. App. Dec. 8, 2000) *perm. app. denied* (Tenn. May 14, 2001), *see Bradley*, 984 S.W.2d at 933 (holding: a Rule 59 motion should not be used to raise new legal theories where motion for summary judgment is pending). We review a trial court's determination of whether to grant a Rule 59.04 motion to alter or amend a judgment under an abuse of discretion standard. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003).

In this case, the parties do not dispute that Father is the biological father of M.L.D. or that Mother and Father lived together at the time of M.L.D.'s birth and for a period of time thereafter. Neither Mother nor Father dispute that they entered into an agreement for custody and support of

---

[1] Petitioners have attached a document which they submit is a statement of the evidence to their brief to this Court. However, a document attached to a brief is not a part of the official record before this Court on appeal. *Hunt v. Shaw*, 946 S.W.2d 306, 309 (Tenn. Ct. App. 1996).

[2] Nine of the eighteen issues Petitioners enumerate in their brief are predicated on this issue.

M.L.D. when they separated, and this agreement is in record.[3]  Further, it is undisputed that Father exercised some of his parental rights and obligations after the birth of M.L.D., although the parties dispute the nature and extent of Father's desire to assume his parental obligations.  Moreover, Father asserts he was prevented from continuing his relationship with M.L.D. by Mother's refusal to allow him access to the child.

Under these circumstances, we cannot say any injustice results from the trial court's refusal to grant Petitioners' Rule 59 motion to allow consideration of the question of whether Father is M.L.D.'s legal parent.  Petitioners waived this issue by failing to raise it during the trial proceedings.  Likewise Petitioners waived the issue, raised for the first time on appeal, of whether Evan Nahmias was properly named the guardian ad litem in this case by order of the court.[4]  Accordingly, we will not consider these issues here.

We next turn to whether the trial court erred in determining that the proof did not support a finding by clear and convincing evidence that Father willfully abandoned M.L.D.  The Tennessee Code provides, in pertinent part:

> "Abandonment" means, for purposes of terminating the parental or guardian rights of parent(s) or guardian(s) of a child to that child in order to make that child available for adoption, that:
> (i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child[.]

Tenn. Code Ann. § 36-1-102(1)(A)(I)(2001 & Supp. 2004).

The element of willfulness is central to the determination of abandonment.  *See In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999).  This Court recently has noted that, "[f]ailure to support a child is 'willful' when a person is aware of his or her duty to support, has the capacity to provide the support, makes no attempt to provide support, and has no justifiable excuse for not providing the support."  *In re Adoption of T.A.M.*, No. M2003-02247-COA-R3-PT, 2004 WL 1085228, at *4 (Tenn. Ct. App. May 12, 2004) (*no perm. app. filed*).  A custodial parent's or third party's conduct does not excuse a biological parent's willful failure to support or visit unless that conduct actually prevents or significantly hinders the parent from doing so.  *In re D.M.D.*, No. W2003-00987-COA-R3-PT, 2004 WL 1359046, at *3 (Tenn. Ct. App. June 17, 2004).  Further,

---

[3]This agreement was never entered as an order of any court.

[4]We note that Petitioners did not raise this issue in either their motion to alter or amend the judgment or in their motion to strike the report of the guardian ad litem.  Additionally, in their motion for rehearing on temporary visitation, Petitioners stated, "Evan Nahmias has been appointed as Guardian Ad Litem in this matter and has filed a report."

interference with a parent's attempts at visitation does not excuse the parent from his obligation to support the child financially. *Id.*

The Tennessee Supreme Court examined the element of willfulness in *In Re Swanson*, 2 S.W.3d 180. In that case, Brittany Swanson (Brittany) was born to Harry and Brigitte Swanson (Mr. Swanson and Ms. Swanson, respectively) in 1990. Mr. and Ms. Swanson separated in 1991, and Mr. Swanson relocated first to Mississippi and then, in 1991, to Missouri. He remained in Missouri at all times relevant to the lawsuit. Brittany remained with Ms. Swanson, with whom she moved from Tipton County to various places in Shelby County and Mississippi. *In Re Swanson,* 2 S.W.3d at 182.

In 1993, Brittany was placed in the legal care and custody of the Department of Human Services ("DHS") following a determination of dependency and neglect. She was placed in foster care through the Baptist Children's Home and, in 1994, the goal of foster care and reunification with her parents was changed to adoption. *Id.* In 1995, the Baptist Children's Home obtained custody of Brittany and, in January 1996, filed a petition to terminate the parental rights of Ms. Swanson and Mr. Swanson. *Id.* at 183. Ms. Swanson died in October 1996. *Id.* at 182 n.1. DHS made no attempt to contact Mr. Swanson, and Mr. Swanson learned of the termination proceedings from friends who had seen published notice in the newspaper. *Id.* at 183.

Mr. Swanson testified that he had attempted to maintain contact with Brittany, but that Ms. Swanson refused to allow visitation. *Id.* at 182. He further testified that he did not know the whereabouts of Brittany or Ms. Swanson following their several moves, and that he had attempted to learn of their whereabouts through Ms. Swanson's father, who refused to provide any information. The *In re Swanson* Court held that the Tennessee Code provision as it then existed was unconstitutional insofar as it did not require a finding of willfulness to support termination based on abandonment and that the proof did not support a finding of willful abandonment by clear and convincing evidence. It accordingly ordered custody of Brittany to be returned to Mr. Swanson. *Id.* at 181.

In the present case, the trial court considered affidavits and, we assume, testimony regarding whether Mother had refused to allow Father access to M.L.D. and whether she had refused to allow Father to know M.L.D.'s whereabouts. The trial court determined the proof did not support a finding of willful abandonment. Insofar as the trial court's findings are based on witness credibility, we give great deference to the trial court's findings and will not disturb those findings absent clear and convincing evidence to the contrary. *Sullivan v. Sullivan*, 107 S.W.3d 507, 510 (Tenn. Ct. App. 2002). Moreover, as noted above, in the absence of a trial transcript or statement of the evidence, we conclusively presume the findings of the trial court to be correct. Accordingly, we affirm the trial court's determination that clear and convincing evidence did not support a finding of abandonment in this case.

We next address Petitioners' assertion that, after the trial court dismissed their petition for adoption on August 17, 2004, it lost subject matter jurisdiction to enter a parenting plan on

November 2, 2004. Petitioners rely on *In re D.M.D.*, No. W2003-00987-COA-R3-PT, 2004 WL 1359046 (Tenn. Ct. App. June 17, 2004), for the proposition that once the trial court dismissed their petition for adoption, it lost subject matter jurisdiction to entertain further questions of custody or to enter a parenting plan. We disagree with Petitioners' reading of *In re D.M.D.*

In *In re D.M.D.*, we held that, upon dismissal of the petition to terminate parental rights and for adoption, the chancery court did not have subject matter jurisdiction to adjudicate matters of custody because subject matter jurisdiction over issues of custody reverted to the juvenile court, which retained continuing exclusive subject matter jurisdiction over its prior custody order. *In re D.M.D.*, 2004 WL 1359046, at *5. In that case, the chancery court had no subject matter jurisdiction to alter a custody order previously entered in the juvenile court. In the case now before us, however, the parties agree that no court has adjudicated the matter of custody or entered an order pertaining to custody, visitation, or support. Thus, *In re D.M.D.* is inapplicable to this case.

We turn finally to Father's contention that this is a frivolous appeal and to his request for attorney's fees. Father asserts he is entitled to attorneys fees under Tennessee Code Annotated § 36-5-103(c). We disagree. Under § 36-5-103(c), the prevailing party may recover attorney fees incurred in enforcing a child support or custody decree. This is not such a case. However, when it appears to the reviewing court that an appeal from a court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or on its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal. Tenn. Code Ann. § 27-1-122 (2000). Courts construe this section of the Code strictly in an effort not to discourage legitimate appeals. *Davis v. Gulf Ins. Group*, 546 S.W.2d 583, 586 (Tenn. 1977). A frivolous appeal is one that is "devoid of merit" and which cannot reasonably succeed. *Id.* It is one completely "lacking in justiciable issues." *Id.*

The determination of whether a parent's rights to his/her child should be terminated is the most serious and grave issue to be addressed by this Court. Accordingly, we are loathe to consider an appeal of a trial court's judgment terminating a parent's rights to be frivolous. In this case, however, Petitioners appeal from the trial court's determination not to terminate Father's parental rights and do so without benefit of an adequate record for our review. As stated by this Court in *Young v. Barrow*, 130 S.W.3d 59, 67 (Tenn. Ct. App. 2003):

> Thus, an appeal in which the reviewing court's ability to address the issues raised is undermined by the appellant's failure to provide an adequate record is deemed frivolous because it has no reasonable chance of succeeding.

Additionally, Petitioners have attempted to insert new, previously untried issues into this matter at every post-judgement stage of litigation. Petitioners are not acting *pro se*, moreover, but have the benefit of legal counsel who is presumed versed in the rules of civil and appellate procedure. They have raised eighteen issues in their brief for review by this Court, all of which are without merit. Under these circumstances, we find this appeal to be frivolous. This cause is remanded to the trial

court for the assessment of damages in accordance with Tennessee Code Annotated § 27-1-122 and for any further proceedings which may be required.

### *Holding*

In light of the foregoing, the judgment of the trial court is affirmed. Costs of this appeal are taxed to the Appellants, J.M.T. and D.C.T., and to their surety, for which execution may issue if necessary.

_____

DAVID R. FARMER, JUDGE