# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### Assigned On Briefs June 12, 2008

## IN THE MATTER OF: JQW (D.O.B. 03/05/00) and LKW (D.O.B. 01/12/05)

**Direct Appeal from the Juvenile Court for Madison County**
**No. 45-40, 352    Christy R. Little, Judge**

_____

**No. W2008-00227-COA-R3-PT  -  Filed July 23, 2008**

_____

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

G. Michael Casey, Jackson, Tennessee, for the appellant, Nikia Kiwan Long.

Robert E. Cooper, Jr., Attorney General and Reporter and Amy T. McConnell, Assistant Attorney General.

Lanis L. Karnes, Guardian Ad Litem.

## MEMORANDUM OPINION[1]

This is a termination of parental rights case. On June 19, 2007, the Department of Children's Services ("DCS") filed a petition in the Juvenile Court for Madison County to terminate the parental rights of Nikia Kiwan Long ("Mother") and Terry Lowvall Woods ("Father") to their minor children, JQW, born March 2000, and LKW, born January 2005. In its petition, DCS asserted the statutory grounds of abandonment, substantial noncompliance with the permanency plan, and persistence of conditions leading to the children's removal from the home. Following a hearing on December 11, 2007, the trial court entered separate orders terminating Father's rights and terminating Mother's

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

rights based on abandonment for failure to support, persistence of conditions that prevented the children's return to Mother, and substantial noncompliance with the permanency plan. Only Mother appeals. We affirm.

### *Issues Presented*

Mother presents the following issues for our review:

(1) Whether the trial court's finding of statutory grounds for termination of the Mother's parental rights is supported by clear and convincing evidence.

(2) Whether the State's failure to provide the respondent with a copy of the explanation of the criteria for termination requires dismissal of the action.

(3) Whether termination of parental rights is in the best interests of the children.

### *Standard of Review*

We review the decisions of a trial court sitting without a jury *de novo* upon the record, with a presumption of correctness as to the trial court's findings of fact, unless the evidence preponderates otherwise. *In Re: Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). Tenn. R. App. P. 13(d). No presumption of correctness attaches, however, to a trial court's conclusions on issues of law. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn.2 000); Tenn. R. App. P. 13(d).

Tennessee Code Annotated § 36-1-113 governs the termination of parental rights. The Code provides, in pertinent part:

(c) Termination of parental or guardianship rights must be based upon:
(1) A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and
(2) That termination of the parent's or guardian's rights is in the best interests of the child.

Tenn. Code Ann. § 36-1-113(c) (2005 & Supp. 2007).

Thus, every termination case requires the court to determine whether the parent whose rights are at issue has chosen a course of action, or inaction, as the case may be, that constitutes one of the statutory grounds for termination. *In Re: Adoption of a male child, W.D.M.*, No. M2002-02963-COA-R3-CV, 2003 WL 22794524, at *3 (Tenn. Ct. App. Nov. 25, 2003)( no perm. app. filed ); see generally Tenn. Code Ann. § 36-1-113(g)(1)-(9) (2005 & Supp. 2007). The State may not deprive a parent of their fundamental right to the custody and control of their child unless clear and convincing evidence supports a finding that a statutory ground for termination exists and

that termination is in the best interests of the child. Tenn. Code Ann. § 36-1-113(c) (2005 & Supp. 2007). Although the "clear and convincing evidence" standard is more exacting than the "preponderance of the evidence" standard, it does not require the certainty demanded by the "beyond a reasonable doubt" standard. *In Re: M.L.D.*, 182 S.W.3d 890, 894 (Tenn. Ct. App. 2005). Clear and convincing evidence is evidence that eliminates any substantial doubt and that produces in the fact-finder's mind a firm conviction as to the truth. *Id.* Insofar as the trial court's determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent evidence of clear and convincing evidence to the contrary. *Id.* With this standard of review in mind, we turn to whether the trial court erred in terminating Mother's rights based on abandonment for failure to support, persistence of conditions, and substantial noncompliance with the parenting plan.

## *Analysis*

We first address Mother's assertion that the trial court should have dismissed this matter because the Department of Children's Services failed to provide her with a copy of the explanation of the criteria for termination. The trial court found that, although Mother "insisted at trial" that DCS never advised her that failure to visit her children could be considered abandonment and grounds for termination of her parental rights, Mother received the Criteria for Termination of Parental Rights information sheet ("the Criteria") from DCS. The trial court specifically noted that DCS case manager Angela Rubin testified that the Criteria was verbally explained at the first permanency plan meeting; that, although Mother did not attend a second permanency plan meeting, the Criteria was mailed to Mother with the permanency plan; and that Mother had signed the Criteria on December 20, 2005. The record in this case includes a copy of the Criteria bearing Mother's signature. This argument is without merit.

We next turn to whether clear and convincing evidence supports the termination of Mother's parental rights based on abandonment for failure to support. We begin our review of the trial court's judgment on this issue by noting that the trial court did not terminate Mother's rights based on abandonment for failure to visit. The trial court found that, although Mother had undergone kidney surgery in October 2006, she was well recovered and had returned to work after a recovery period of approximately six weeks. The trial court found that from February until June 2007, Mother had made one visit to Tennessee since moving to Indiana and then Illinois following her surgery, and that her visitation with the children had been "token at best." It appears to be undisputed that Mother failed to attend or to be particularly involved in events surrounding LKW's heart surgery in January 2006, although she was in Jackson when the surgery took place. The trial court found that Mother had visited the children four times in the thirteen months preceding the hearing, but that she had called regularly. The trial court concluded that, in light of Mother's regular phone calls to the children, DCS had not established abandonment for failure to visit by clear and convincing evidence.

The trial court did conclude, however, that Mother had "made no attempt to support the children and ha[d] provided no justifiable excuse for failing" to do so. The trial court found that

Mother had been working since recovering from surgery in late 2006, but had "sent almost nothing for the benefit of the children." The trial court found that Mother had "not sent any child support or support of any kind," and that she "sent almost nothing for holidays or birthdays." Although the trial court acknowledged that Mother had stated that she could not afford her rent and other bills without government assistance, the trial court concluded that Mother was aware of her duty to support the children, had the means to send some support, and simply failed to do so.

In her brief to this Court, Mother fails to point to any evidence that would refute the trial court's findings or conclusions with respect to this ground. Mother asserts that she maintained contact with the children but, as noted above, the trial court did not terminate Mother's rights based on abandonment for failure to visit. Although Mother asserts she brought gifts for the children and sent JQW a kindergarten graduation card, Mother points to no evidence that suggests any attempt to support these children financially, despite the fact that she was working and receiving government assistance. We affirm termination based on abandonment for failure to support.

We next turn to the trial court's determination that clear and convincing evidence supported termination of Mother's parental rights based on persistence of conditions and failure to substantially complete the permanency plan. JQW and LKW were removed from their parents' home in December 2005 following a finding of dependency and neglect. In its 2005 order, the trial court found the children were

> living in a home without utilities, running water, or an adequate food supply. Candles were being used for a light source. The home is very cluttered with clothing and trash. Pills were lying on the kitchen table within easy access of the children. Dirty dishes covered the surfaces in the kitchen, as well as inside the oven. The mother and father both tested positive for marijuana and cocaine.

These findings appear to have been undisputed.

In her brief to this Court, Mother asserts that she has "made significant progress in ameliorating the conditions that led to the child's removal." She points to little factual evidence, however, that would preponderate against the trial court's finding that, although Mother initially made some efforts to ameliorate the conditions leading to the children's removal, Mother remained unable to provide a suitable home for the children as required by the permanency plan at the time DCS filed its petition to terminate parental rights. The trial court found that, although Mother was no longer abusing illegal drugs, she had been living in cars, homeless shelters, substandard housing and with relatives throughout her adult life, and that although she had signed a lease ten days before the hearing of this matter for an apartment in Chicago, Mother would be unable to support her children on a long-term basis. In its "enumerated allegations" filed in the trial court in November 2007, DCS asserted, "[w]hen the children came into custody, the parents were abusing drugs and the children's home was in deplorable shape. Now the parents have no known home at all. The children still do not have a place to live with the parents that is safe and suitable."

As we often have noted "mere poverty is neither ground nor arguable reason for the termination of a parent's rights." *In Re MAB*, No. W2007-00453-COA-R3-PT, 2007 WL 2353158, at *3 (Tenn. Ct. App. Aug. 20, 2007)(citing *In Re: DMD & JLA*, No. W2003-00987-COA-R3-PT, 2004 WL 1359046, at *5 (Tenn. Ct. App. June 17, 2004)). In this case, Mother has a net income of approximately $1000 per month. Mother points to no evidence in the record, however, to indicate that she obtained suitable housing until just a few days before the trial of this matter, or that she is able to provide food, clothing and other necessary goods for these children. Indeed, we cannot say that she even argues in her brief that she is able to care for and support these children. We affirm.

We finally turn to whether termination of Mother's parental rights is in the best interests of the children. Other than contending that she has had "meaningful" contact with her children, Mother offers little argument in her brief with respect to why the trial court erred in its determination that it is in the children's best interests to terminate her parental rights. It is undisputed, however, that the children have lived with their foster parents since December 2005, when LKW was under one-year of age; that they have bonded with their foster parents; that the foster family desires to adopt the children; and that Mother's contact with the children has been limited to some telephone conversation. Upon review of the record, we agree with the trial court that termination of Mother's parental rights is in the children's best interests. We affirm.

### *Holding*

In light of the foregoing, the judgment of the trial court is affirmed. Costs of this appeal are taxed to the Appellant, Nikia Kiwan Long, and her surety.

DAVID R. FARMER, JUDGE