# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### Assigned On Briefs September 12, 2008

## IN RE: D. F., S. F., T. F., L. F., A. F., A. F, D. F., K. F.,
## Children Under Eighteen (18)Years of Age

**Direct Appeal from the Juvenile Court for Madison County**
**No. 41-37,096     Christy R. Little, Judge**

---

**No. W2007-02849-COA-R3-PT  - Filed October 27, 2008**

---

This is a termination of parental rights case.  The juvenile court terminated Mother's parental rights to her eight children based on persistence of conditions and upon finding that she is incompetent to adequately provide for their care and supervision.  Father's parental rights were terminated based on persistence of conditions.  Both Mother and Father appeal.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Jeremy B. Epperson, Pinson, Tennessee, for the appellant, Father.

Carl E. Seely, Jackson, Tennessee, for the appellant, Mother.

Lanis L. Karnes, *Guardian ad Litem* for the minor children.

Robert E. Cooper, Jr., Attorney General and Reporter, Michael E. Moore, Solicitor General, and Preston Shipp, Assistant Attorney General, for the appellee, State of Tennessee Department of Children's Services.

## MEMORANDUM OPINION[1]

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

We begin our review of this matter by expressing our agreement with the trial court that this is a difficult and heart-breaking case. D. F.; S. F; T. F.; L. F.; A. F.; A. F.; D. F.; K. F. (collectively, "the children") are the minor children of B. F. ("Mother") and L. F. ("Father"). When the Department of Children's Services ( hereinafter "DCS") filed its petition to terminate parental rights in the Juvenile Court for Madison County in December 2005, the eldest child was ten years of age and the youngest was under one year of age. When the eldest child was born in 1995, Mother was fourteen years of age and Father was substantially older than eighteen years of age. Mother and Father married in 1999. It is undisputed that both parents are mildly mentally challenged and have a history of substance abuse; that Mother has a history of depression and schizophrenia which has been aggravated by drug abuse and intermittent refusal to take medication; and that both parents have displayed extremely limited parenting skills. Father also has had anger management difficulties, and Mother has been abusive toward at least some of the children. Neither parent attended high-school; medical experts testified that they function at about a fifth grade level. Father works sporadically at a cotton gin and Mother and Father receive disability payments. When the petition to terminate parental rights was filed in December 2005, the children had been in State custody since June 2005. However, DCS first became involved with this family in September 2000, when the Haywood County Juvenile Court brought one of the children into protective custody. In May 2001, the Haywood County Juvenile Court found that the five children born to Mother and Father at that time were dependent and neglected and that they should remain in foster care. The children were returned to their parents' custody in December 2002.

After what appears to have been a highly charged relationship between the parents and DCS, the trial court conducted hearings on the 2005 petition to terminate in March, May, July and August 2007. The trial court entered final judgment in the matter on November 30, 2007, terminating Father's parental rights based on persistence of conditions and Mother's based on persistence of conditions and a finding of incompetency. Mother and Father filed timely notices of appeal to this Court. Following motions for extensions of time filed by Mother and Father, Father's brief was filed in this Court in August 2008. We affirm.

### Issues Presented

The trial court appointed attorneys to represent both Mother and Father and, in their briefs to this Court, they present slightly differing statements of the issues. The issues presented, as we reword them, are:

(1)     Whether the trial court erred in terminating Father's and Mother's parental rights based on persistence of conditions, and in finding that Mother is incompetent to adequately care for and supervise the children.

(2)     Whether the trial court erred by determining that DCS made reasonable efforts to reunify the family.

(3)    Whether the trial court erred by determining that termination of Mother and Father's parental rights is in the best interests of the children.

Mother also asserts that her due process rights were violated by DCS's failure to notify her counsel of all child and family team meetings and permanency plan staffing meetings and by the State's "interference" with an independent psychological exam.

### *Standard of Review*

We review the decisions of a trial court sitting without a jury *de novo* upon the record, with a presumption of correctness as to the trial court's findings of fact, unless the evidence preponderates otherwise. *In Re: Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). Tenn. R. App. P. 13(d). No presumption of correctness attaches, however, to a trial court's conclusions on issues of law. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000); Tenn. R. App. P. 13(d).

Tennessee Code Annotated section 36-1-113 governs the termination of parental rights. The Code provides, in pertinent part:

(c) Termination of parental or guardianship rights must be based upon:
(1) A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and
(2) That termination of the parent's or guardian's rights is in the bests interests of the child.

Tenn. Code Ann. § 36-1-113(c)(2005).

Thus, every termination case requires the court to determine whether the parent whose rights are at issue has chosen a course of action, or inaction, as the case may be, that constitutes one of the statutory grounds for termination. *In Re: Adoption of a male child, W.D.M.*, No. M2002-02963-COA-R3-CV, 2003 WL 22794524, at *3 (Tenn. Ct. App. Nov. 25, 2003)(*no perm. app. filed*); *see generally* Tenn. Code Ann. § 36-1-113(g)(1)-(9)(2005). The State may not deprive a parent of their fundamental right to the custody and control of their child unless clear and convincing evidence supports a finding that a statutory ground for termination exists and that termination is in the best interests of the child. Tenn. Code Ann. § 36-1-113(c)(2005). Although the "clear and convincing evidence" standard is more exacting than the "preponderance of the evidence" standard, it does not require the certainty demanded by the "beyond a reasonable doubt" standard. *In Re: M.L.D.*, 182 S.W.3d 890, 894 (Tenn. Ct. App. 2005). Clear and convincing evidence is evidence that eliminates any substantial doubt and that produces in the fact-finder's mind a firm conviction as to the truth. *Id.* Insofar as the trial court's determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent evidence of clear and convincing evidence to the contrary. *Id.* With this standard of review in mind, we turn to whether the trial court erred in determining that Mother is incompetent to care and supervise her children and

in terminating Mother's and Father's parental rights based on persistence of conditions and a finding that termination is in the best interests of the children.

## *Discussion*

We begin our discussion with Mother's assertion that her due process rights were violated when DCS failed to inform her attorney of certain family team meetings and permanency plan staffings, and where DCS "interfered" with an independent psychological evaluation. In her brief, Mother urges us to "[k]eep in mind that it is the Department's position that these parents are mentally challenged to the point of being incapable of parenting, and yet the responsibility of noticing counsel apparently falls on them." Mother fails to point to any policy or case law, however, to support her contention that DCS's failure to advise counsel directly of any and all meetings constitutes a deprivation of due process. Further, Mother does not indicate which meetings DCS was obligated to advise counsel of but did not, or how Mother was prejudiced by this failure. Although we are not unsympathetic with Mother's argument that, in light of the circumstances of this case, it would have been prudent and preferable for DCS to contact Mother's counsel directly, upon review of the record, we cannot say this failure prejudiced the proceedings in the trial court or adversely affected the evidence presented to the court. We further note that Mother has been competently represented by appointed counsel in both the trial court and on appeal.

We likewise cannot agree with Mother that the record supports a conclusion that DCS somehow prejudiced the independent psychological examination of Mother conducted by Dr. Robert Kennon (Dr. Kennon). Mother's argument, as we understand it, is that Dr. Kennon was influenced by earlier evaluations provided to him by DCS. Dr. Kennon testified, however, that he "encouraged" Mother and Father to provide him with documentation from previous evaluations; that he generally reviews all prior evaluations; that he reviewed previous evaluations after meeting with Mother and Father; that the earlier evaluations did not influence him; and that he agreed with some of the conclusions stated in earlier evaluations and disagreed with others. Although, upon review of the entire record, we agree with Mother that DCS's conduct throughout this litigation was not exemplary, we cannot agree with Mother that her due process rights were violated or that, specifically, Dr. Kennon's conclusion that Mother and Father are unable to care for their children "despite [their] best attempts, despite [their] love" were influenced by DCS.

We next turn to whether clear and convincing evidence supports the trial court's finding that Mother is incompetent to care for the children, and that the conditions leading to the children's removal from Mother continue to exist. Tennessee Code Annotated § 36-1-113(g)(8) grants the chancery, circuit, and juvenile courts concurrent authority to terminate parental rights prior to an adoption proceeding if it finds, by clear and convincing evidence, that

> [t]he parent or guardian of the child is incompetent to adequately provide for the further care and supervision of the child because the parent's or guardian's mental condition is presently so impaired and is so likely to remain so that it is unlikely that the parent or guardian will be able to assume or resume the care of and responsibility

for the child in the near future, and . . . That termination of parental or guardian rights is in the best interest of the child.

Tenn. Code Ann. § 36-1-113(g)(8)(A)&(B)(2005). No showing of willfulness is required. *Id.* The Code further provides that grounds for the termination of parental rights may be established upon a showing, by clear and convincing evidence, that:

(A) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:

(i) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;

(ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and

(iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home[.]

Tenn. Code Ann. § 36-1-113(g)(3)(A)(2005).

In this case, the trial court found that Mother's mental illness, substance abuse history, and history of abuse rendered her incompetent to care for the children, and that these conditions were likely to persist. The trial court heard the testimony of eleven witness comprising DCS workers, mental health experts, and treatment providers. The trial court found these witnesses to be credible, with the exception of Mary Bragg, who had prior contact with the family. The trial court found that "[w]ithout constant medical and psychological management, the mother is a threat to herself and her children. Sadly, the court sees no end to this cycle of abuse to these children at the hands of their mother." Upon review of the entire record, and in particular the testimony and report of Dr. Kennon, the licensed psychologist who conducted an independent evaluation of Mother and Father, we agree.

We likewise agree with the trial court that clear and convincing evidence supports termination of Father's parental rights based on persistence of conditions. The trial court found that Father is simply unable to protect the children from Mother, and that the conditions present in the household at the time the children were removed continue to persist. Upon review of the record, we agree with the trial court that the conditions leading to the children's removal, which may generally be described as their parents' inability to care for them, continue to persist and are highly unlikely to be rectified. Dr. Kennon summarized the situation as follows:

I think that [Mother and Father] do care and do love their children deeply. The conflict I have with that is I did not find sufficient evidence or pillars to support that they would be able to reliably and consistently care for the children and that bothers

-5-

me and not to speak of the - - all the psychological problems, all the history, the history of abuse, the repeated history of these problems, the fact that it's been reoccurring over years and that there have been problems with the children throughout for the past four years. There's been repeated issues. . . . I have deep reservations and I take this extremely seriously that . . . the children will not be cared for despite [Mother's and Father's] best attempts . . . I have great deep, deep concerns that their care is at question.

When questioned as to whether Father would be capable of caring for the children if Mother were "not in the picture," Dr. Kennon responded: "No." Dr. Kennon's report likewise supports the trial court's determination that the conditions are unlikely to be rectified with further training, absent constant supervision and intervention. We affirm.

Mother and Father and the guardian ad litem in this case contend that termination of parental rights is not in the bests interest of the children. They assert that the children love their parents, and the guardian ad litem in particular asserts that the children have not fared well in foster care. The trial court, on the other hand, determined that clear and convincing evidence supported a finding that termination was in the best interests of the children. The trial court made detailed findings with respect to each child, considering each child's experience with Mother and Father, foster care situation, and special needs. Upon review of the record, we cannot say the evidence preponderates against the trial court's findings. We affirm.

We next turn to whether DCS made reasonable efforts to unify the family. The primary argument of Mother, Father, and the guardian ad litem in this case appears to be that DCS should have placed the children with an uncle, "Uncle George," rather than petition the court to terminate Mother's and Father's parental rights. Upon review of the record, we agree with DCS that, although Uncle George, himself the father of fifteen children, apparently by several mothers, appears to have been willing to provide a home for the children, there is no evidence that Uncle George is able to care for these children or to provide for their many special needs, or that this would be a step toward reunification. The trial court found:

> The Department of Children's Services has provided reasonable efforts to this family by including them in all treatment team meetings, by providing parenting classes, anger management, counseling and supervised visitation. In addition, funds by DCS allowed the parties to receive a LeBonheur CCP evaluation, (the independent evaluation by Dr. Robert Kennon was paid for by the AOC,[2] pursuant to defense counsel's request) and various financial services such as payment of utility bills and other services.

Upon review of the record, and again noting that this appears to have been a highly contentious relationship between Mother and Father and DCS, we do not find that the evidence preponderates

---

[2]The Administrative Offices of the Court.

against the finding of the trial court. Additionally, Mother and Father offer no suggestion as to what services DCS could or should have provided but did not. At the trial of the matter, moreover, Dr. Kennon was questioned regarding services that DCS could have provided to Mother and Father to unify them with the children. Dr. Kennon responded: "I think a lot of the services were provided. . . . therapy for both . . . drug counseling. . . . some marital counseling . . . . parenting assistance, training in that arena . . . how to go about parenting . . . anger issues." Dr. Kennon further testified that, despite the assistance they have received and the training that Mother and Father have undergone, he questioned whether they could "handle any or even one of the children." We agree with the trial court that DCS made reasonable efforts to reunify in light of the circumstances.

### *Holding*

In light of the forgoing, we affirm the judgment of the trial court. In so holding, we again note the complexity and heart-breaking nature of this case, where Mother and Father are simply unable to care for and provide a safe home for their children despite their best efforts and emotional bonds. Costs of this appeal are taxed to the Appellants, B.J.F. and L.F.

 

 

 

_____
DAVID R. FARMER, JUDGE