IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 1, 2020

## RICHARD ALAN SHANNON v. GENERA CARANDANG SHANNON

**Appeal from the Circuit Court for Montgomery County**
**No. CC-18-CV-1694      Ross H. Hicks, Judge**

_____

**No. M2020-00055-COA-R3-CV**

_____

The trial court granted a wife's motion to alter or amend a final decree of divorce. The ruling modified the parties' marital dissolution agreement. On appeal, the husband contends that there was no basis for setting aside an agreement that the parties entered into voluntarily and knowingly. Discerning no abuse of discretion, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and THOMAS R. FRIERSON II, J., joined.

Jacob P. Mathis and Tiffany D. Leffler, Clarksville, Tennessee, for the appellant, Richard Alan Shannon.

Gregory D. Smith, Clarksville, Tennessee, for the appellee, Genera Carandang Shannon.

## OPINION

### I.

An Army veteran, Richard Shannon, sought a divorce from his wife of twenty-three years, Genera Carandang Shannon, on the ground of irreconcilable differences. *See* Tenn. Code Ann. § 36-4-101(a)(14) (2017). With his complaint, Mr. Shannon filed a marital dissolution agreement signed by both parties. The MDA divided personal property, debts, and real property. It also provided that "[e]ach party waives all right, title and interest they may have in the other party's retirement." Despite being married for almost the entirety of Mr. Shannon's twenty-five years of military service, the MDA made no other mention of Ms. Shannon's entitlement to military benefits.

Seventy-two days after the filing, the circuit court entered a final decree of divorce. The divorce decree incorporated the MDA, which the court "approved and ratified." The decree also specifically ordered "that each party waives all right, title and interest they may have in the other party's retirement."

Within thirty days, Ms. Shannon filed a Motion to Alter or Amend and/or Set Aside Final Decree of Divorce. She asked that the MDA be set aside in full or at least modified to award her "rightful share" of Mr. Shannon's military retirement and to address "20/20"[1] benefits and the Survivor Benefit Plan or SBP.[2]

As grounds for her motion, Ms. Shannon stated that, although the marital dissolution agreement recited that both parties had been represented by counsel, she was not. She alleged that she felt pressured by Mr. Shannon to sign the agreement. She had been raised in the Philippines, and according to her, her culture "teaches women to obey their husband[.]" She was also "intimidated and afraid of [Mr. Shannon]." And she claimed that Mr. Shannon told her that their retirements "cancelled each other out." Allegedly, only later did she learn that Mr. Shannon's "military retirement was already one-hundred percent (100%) vested and paying" while hers would not begin for another twelve years. Ms. Shannon had also been denied health care coverage under TRICARE.[3] Ms. Shannon supported her motion with her affidavit.

The trial court set aside the final decree to the extent that it addressed retirement accounts and military benefits. The court concluded "that the portion of the [MDA] involving the retirement accounts for each party and the 20/20 military spouse benefits were not adequately addressed in the final decree." The court reserved its ruling on the proper treatment and division of the accounts and benefits.

---

[1] The term "20/20" refers to the "unremarried former spouse of a member or former member" of the military who qualifies as a "dependent" for purposes of certain military benefits. *See* 10 U.S.C. § 1072(2)(F), (G) (Supp. 2019); 10 U.S.C. § 1062 (Supp. 2019).

[2] The Survivor Benefit Plan or SBP is an annuity program that pays, upon the death of the retired servicemember, benefits based on a percentage of retirement pay. *Woll v. United States*, 41 Fed. Cl. 371, 372 (1998); *see* 10 U.S.C. § 1448 (Supp. 2019).

[3] TRICARE delivers health and medical benefits for military servicemembers, their families, and "certain unremarried former spouses." William J. Camp, *Health Care Options for Former Military Spouses: Tricare & the Continued Health Care Benefit Program (CHCBP)*, 43 FAM. L.Q. 227, 228-29 (2009); *see* 10 U.S.C. § 1072(7).

Following the court's order, the parties agreed that Ms. Shannon was "a 20/20/20 spouse[4] and therefore entitled to any and all military benefits afforded to her to include, but not limited to health benefits, post privileges and any other normal retiree's benefit." But the questions of whether Ms. Shannon was entitled to any portion of Mr. Shannon's military retirement and to the SBP were reserved for an evidentiary hearing.

At the evidentiary hearing, the court heard testimony from the Shannons. Ms. Shannon testified that she was born in the Philippines and graduated from college there. English was her second language, but she had lived in the United States for thirty-three years. She had served in the Army for ten years and was currently working for the U.S. Department of Defense as a supply technician at an Army hospital. She had a retirement of her own through the Department of Defense.

Mr. Shannon's attorney in the divorce prepared the MDA. Ms. Shannon acknowledged reading the MDA before signing it. She also believed, at the time of signing, that she understood it. She planned to hire an attorney to review the MDA on her behalf, but she claimed that Mr. Shannon told her not to. According to Ms. Shannon, Mr. Shannon said "it's going to cost [him] money and he's not going to pay for it."

As for the provision of the MDA addressing the parties' retirements, Ms. Shannon testified that Mr. Shannon told her "his retirement and [her] retirement [we]re going to even out." And she understood that she was getting nothing from his retirement and that he was receiving nothing from hers. But there was no discussion of her waiving claims to benefits available to former spouses of servicemembers.

In his testimony, Mr. Shannon acknowledged hiring a law firm to prepare the divorce paperwork on his behalf. The same firm prepared the MDA, which Mr. Shannon presented to Ms. Shannon for signing. He recalled that Ms. Shannon "did mention, possibly, initially getting a lawyer." But he denied telling her that she could not get a lawyer of her own.

With respect to the retirement provision, he testified that he told her, "if we waived each other's rights at retirement, that this would be the easiest way and we could separate our ways and – and continue on with our lives." Mr. Shannon also volunteered that he might have used the words "cancel out" as part of the discussion.

---

[4] A 20/20/20 spouse is an unremarried former spouse who was "married to their servicemember spouse for 20 years; the servicemember had 20 years of military service; and the overlap of the marriage and military service [wa]s at least 20 years." *Clark v. Dep't of the Army*, No. CV 17-7757, 2019 WL 917597, at *1 (E.D. La. Feb. 25, 2019), *aff'd sub nom. Clark v. Dep't of Army*, 775 Fed. Appx. 168 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 2529 (2020); *see* 10 U.S.C. § 1072(2)(F).

3

The court granted Ms. Shannon's motion to alter or amend. It concluded "that the signed marital dissolution agreement was not equitable and [Mr. Shannon] exerted improper pressure on [Ms. Shannon] to sign said marital dissolution agreement." The court also determined that it had failed to make an equitable division of marital property.

The court made several factual findings to support its conclusions. It found that Ms. Shannon had represented herself in the divorce and that she signed the MDA without the benefit of counsel. The court also found that, "[a]lthough [Mr. Shannon] told [Ms. Shannon] that the two sets of retirements equal out, there is actually a significant monetary difference between the two retirements." And Mr. Shannon "incorrectly conveyed the competing values between [Mr. Shannon's] and [Ms. Shannon's] retirements."

## II.

Mr. Shannon raises a single issue on appeal: whether the "court erred in granting [Ms. Shannon's] motion to alter or amend the divorce decree due to the parties' signed Marital Dissolution Agreement as it relates to the parties' retirement accounts?" We review a trial court's decision on a motion to alter or amend for an abuse of discretion. *Harmon v. Hickman Cmty. Healthcare Servs., Inc.*, 594 S.W.3d 297, 305 (Tenn. 2020). A court abuses its discretion when it applies the wrong legal standard, reaches an illogical or unreasonable decision, or bases its decision on a clearly erroneous assessment of the evidence. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). Our review of a discretionary decision is limited to determining whether the trial court's decision had the necessary factual support, whether the court identified and applied the correct law, and whether the court's decision was "within the range of acceptable alternative dispositions." *Id.*

A Rule 59.04 motion "provide[s] the trial court with an opportunity to correct errors before the judgment becomes final." *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005). A motion to alter or amend may be granted "(1) when the controlling law changes before a judgment becomes final, (2) when previously unavailable evidence becomes available, or (3) when, for [unique] reasons, a judgment should be amended to correct a clear error of law or to prevent injustice." *Bradley v. McLeod*, 984 S.W.2d 929, 933 (Tenn. Ct. App. 1998), *rev'd on other grounds*, *Harris v. Chern*, 33 S.W.3d 741, 742 (Tenn. 2000).

A written and signed marital dissolution agreement is a contract. *Barnes v. Barnes*, 193 S.W.3d 495, 498-99 (Tenn. 2006). And absent a legal defense, it must be enforced as a contract. *See Matthews v. Matthews*, 148 S.W.2d 3, 11 (Tenn. Ct. App. 1940) (holding that, given "the entire absence of any legal grounds upon which to base a decree annulling said contract," a settlement agreement entered into as a part of a divorce must be "enforced as an agreement"). Mr. Shannon contends that Ms. Shannon "did not present any evidence at trial to show that the [MDA] that she signed [wa]s not a legally enforceable contract."

Mr. Shannon also interprets the trial court's order as "finding no violations of contract law relating to the signing of the [MDA]."

Although finding that Mr. Shannon "exerted improper pressure" on Ms. Shannon and misrepresented the respective values of their retirement accounts to her, the court did not find duress such that the MDA was unenforceable. *See Cummings Inc. v. Dorgan*, 320 S.W.3d 316, 331 (Tenn. Ct. App. 2009) (recognizing "legal duress . . . vitiate[s] an otherwise valid contract"). The court also did not find undue influence or fraud. *See In re Baby*, 447 S.W.3d 807, 832 (Tenn. 2014) (recognizing undue influence and fraud as contractual defenses). Still we discern no abuse of discretion in the grant of Ms. Shannon's motion to alter or amend.

In divorces filed on the ground of irreconcilable differences, before granting the divorce, the court has a statutory obligation to find "that the parties have made adequate and sufficient provision by written agreement . . . for the equitable settlement of any property rights between the parties." Tenn. Code Ann. § 36-4-103(b) (Supp. 2020).[5] In granting the motion to alter or amend, the court conceded that it had failed to fulfill this mandate. The court's concession distinguishes this case from our decision in *Vaccarella v. Vaccarella*, 49 S.W.3d 307 (Tenn. Ct. App. 2001), on which Mr. Shannon relies.

In *Vaccarella*, this Court vacated the grant of a motion to alter or amend that set aside the terms of an MDA incorporated into a final decree of divorce. *Id.* at 312. One trial judge set aside the final decree entered by another trial judge, in part, on the basis that the judge who entered the decree failed to conduct a hearing and to include a specific finding in his decree "that the parties have made adequate and sufficient provision by written agreement for the custody and maintenance of any children of that marriage and for the equitable settlement of any property rights between the parties." *Id.* (quoting Tenn. Code Ann. § 36-4-103(b)). In vacating, we concluded that a hearing was not required unless the court was dissatisfied with the parties' agreement. *Id.* at 313. We also concluded that the judge who entered the decree otherwise complied with his obligations under the statute. *Id.* at 314. We reached this conclusion even though the judge did not "complete an independent investigation prior to signing the parties' divorce decree" and "did not use the magic words 'adequate and sufficient'" in the final decree. *Id.*

Here, the trial court acknowledged its lack of compliance with statute. This constituted a clear error of law justifying relief from the final decree. *See Bradley*, 984 S.W.2d at 933; *Vaccarella*, 49 S.W.3d at 312. And an injustice resulted from the oversight. The court found that the differences in the values of the retirements resulted in "an inequitable property division." Ms. Shannon agreed to this inequitable arrangement, but

---

[5] Subsection (b) of Tennessee Code Annotated § 36-4-103 was amended in 2020 to add language at the end of the subsection. 2020 Tenn. Pub. Acts 31. No changes were made to the language pertinent to this appeal.

the court approved it on the representation contained in the MDA that both parties were represented by counsel.  Representation by counsel permits inferences that the client is fully advised of the agreement's terms and that there is no fraud or undue influence.  *See Matthews*, 148 S.W.2d at 11.  Although the court found there was no intent on the part of Mr. Shannon or his counsel to mislead, Ms. Shannon was not represented by counsel.

## III.

Under the circumstances of this case, the trial court did not abuse its discretion in granting the motion to alter or amend.  So we affirm the judgment of the trial court.

_____s/ W. Neal McBrayer_____
W. NEAL MCBRAYER, JUDGE