# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
Assigned On Briefs April 28, 2011

## IN THE MATTER OF: BRANDON C. S. (d/o/b 10/1/2002), a Child Under Eighteen (18) Years of Age

### Direct Appeal from the Circuit Court for Shelby County
### No. CT-00359509     James F. Russell, Judge

_____

### No. W2010-01015-COA-R3-PT  - Filed May 26, 2011

_____

The trial court terminated the parental rights of Mother and Father on the grounds of persistence of conditions and severe child abuse.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Alicia A. Howard, Memphis, Tennessee, for the appellants.

Robert E. Cooper, Jr., Attorney General and Reporter and Marcie E. Greene, Assistant Attorney General, for the appellee, State of Tennessee, Department of Children's Services.

### MEMORANDUM OPINION[1]

This is a termination of parental rights case.  In April 2008, the Department of Children's Services ("DCS") filed a petition to adjudicate dependency and neglect in the Juvenile Court of Shelby County.  In April 2009, the juvenile court entered an order finding

_____

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

the minor child, Brandon S. (Brandon), born October 2002, dependent and neglected and ordering that he remain in DCS custody. Brandon's mother ("Mother") and father ("Father," collectively, "Parents") filed a notice of appeal to the Circuit Court of Shelby County. While the matter was pending in circuit court, DCS filed a petition to terminate Parents' parental rights to Brandon in the Chancery Court of Shelby County. The matter was transferred to circuit court and consolidated in October 2009. The matter was heard in the circuit court on January 12 to 14, 2010. In March 2010, the trial court entered an order finding, by clear and convincing evidence, that Brandon was dependent, neglected, and severely abused. The trial court also found, by clear and convincing evidence, that the conditions which led to the removal of Brandon from Parents' home persisted, and that termination of Parents' parental rights was in Brandon's best interest. The trial court also incorporated the findings of the juvenile court into its March 2010 order. Parents filed a notice of appeal to this Court on April 28, 2010. In September 2010, we vacated the trial court's order and remanded the case for entry of an order that fully complied with Tennessee Code Annotated 36-1-113(k) and which fully adjudicated all the claims of the parties. The trial court entered final judgment on October 12, 2010, and the filing of briefs was completed in April 2011.

### Issues Presented

Parents present the following issues for our review, as we slightly re-word them:

(1)     Whether the trial court erred by finding that Brandon is dependent and neglected within the meaning of the statute;

(2)     Whether the trial court erred in finding that grounds for termination of Parents' rights were supported by clear and convincing evidence;

(3)     Whether the trial court erred in terminating parental rights in the absence of a showing of reasonable efforts;

(4)     Whether the trial court erred in considering the written and oral reports and recommendation of the guardian ad litem;

(5)     Whether the trial court erred by determining that termination of parental rights was in Brandon's best interest.

### Standard of Review

We review the decisions of a trial court sitting without a jury *de novo* upon the record, with a presumption of correctness as to the trial court's findings of fact, unless the evidence

preponderates otherwise. *In Re: Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002); Tenn. R. App. P. 13(d). No presumption of correctness attaches, however, to a trial court's conclusions on issues of law. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000); Tenn. R. App. P. 13(d). Tennessee Code Annotated § 36-1-113 governs the termination of parental rights. The Code provides, in pertinent part:

> (c) Termination of parental or guardianship rights must be based upon:
> (1) A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and
> (2) That termination of the parent's or guardian's rights is in the best interests of the child.

Tenn. Code Ann. § 36-1-113(c)(2010). Thus, every termination case requires the court to determine whether the parent whose rights are at issue has chosen a course of action, or inaction, as the case may be, that constitutes one of the statutory grounds for termination. A parent may not be deprived of their fundamental right to the custody and control of their child unless clear and convincing evidence supports a finding that a statutory ground for termination exists and that termination is in the best interests of the child. Tenn. Code Ann. § 36-1-113(c)(2010). Although the "clear and convincing evidence" standard is more exacting than the "preponderance of the evidence" standard, it does not require the certainty demanded by the "beyond a reasonable doubt" standard. *In Re: M.L.D.*, 182 S.W.3d 890, 894 (Tenn. Ct. App.2005). Clear and convincing evidence is evidence that eliminates any substantial doubt and that produces in the fact-finder's mind a firm conviction as to the truth. *Id.* Insofar as the trial court's determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent evidence of clear and convincing evidence to the contrary. *Id.*

The heightened burden of proof in parental termination cases requires us to distinguish between the trial court's findings with respect to specific facts and the "combined weight of these facts." *In Re: Michael C. M.*, No. W2010-01511-COA-R3-PT, 2010 WL 4366070, at *2 (Tenn. Ct. App. Nov. 5, 2010)(quoting *In Re: M.J.B.*, 140 S.W.3d 643, 654 n. 35 (Tenn. Ct. App. 2004)). Although we presume the trial court's specific findings of fact to be correct if they are supported by a preponderance of the evidence, "we are the ones who must then determine whether the combined weight of these facts provides clear and convincing evidence supporting the trial court's ultimate factual conclusion." *Id.*

### *Discussion*

Parents have four children: two daughters, LTS (born February 1990) and LKS (born

January 1991), and two sons, DS (born 1992) and Brandon (born 2002). The relationship between DCS and Parents began December 1992, when LKS, then age two, was removed from Parents' custody when she sustained severe burns over 30 percent of her body after being scalded in a hot bath. During its 1993 investigation, DCS determined that LTS had scars from being whipped, and that DS had what appeared to be a burn on his elbow. The record demonstrates that LKS was in foster care for approximately ten years before returning to Parents' care. It is undisputed that, after returning to Parents' home, LKS was sexually abused by her paternal uncle and that she and her brother, DS, had an incestuous relationship that resulted in the birth of a child in 2008.

In 2007, DCS received a referral alleging that Father had physically abused DS. At the time of the referral, DS's eye and neck were swollen, and DS stated that he was injured when his Father hit him and wrapped a belt around his neck. It was during the course of this investigation that DCS discovered that LKS was pregnant with DS's child, and that DS had exposed Brandon to pornographic videos and "other inappropriate behavior." In December 2007, DS was placed in DCS custody and the family was referred to LaBonheur Center for Children and Parents ("CCP") for evaluation for a second time.

In its April 2008 petition to adjudicate dependency and neglect, DCS alleged Brandon was abused pursuant to Tennessee Code Annotated §§§ 37-1-102(b)(1), 37-1-102(b)(12)(F), and 37-1-102(b)(12)(G). DCS further asserted that Parents had "continued to demonstrate a pattern of poor parenting and decision making[,]" and that "[t]he CCP evaluation also[] stated that [Parents] are not capable of parenting any children." Brandon has remained in foster care since coming into DCS custody in April 2008. At the time of the trial of this matter in January 2010, DS was in foster care; LTS was nineteen years of age, pregnant, and continued to reside with Parents; LKS was eighteen years of age and resided with Parents and her daughter by DS; and Brandon was seven years of age.

The trial court stated that it had evaluated the credibility of the witnesses, and that its conclusions were based, in large part, upon the "compelling testimony of the professionals who [had] testified . . . specifically the expert psychologists, Dr. Earle Donelson ("Dr. Donelson") and Dr. Chris Bertram ("Dr. Bertram")[.]" The trial court found that the evidence was clear and convincing, and the "proof in fact overwhelming," that there had been no "moral compass" in the family. The court found that all of the children had been subject to abuse and neglect; that Parents "transmitted an attitude of defiance and rejection of authority and instruction"; and that parents denied any knowledge of an ongoing sexual relationship between LKS and DS. The trial court found that Dr. Donelson had testified that the family had been through a full team, multi-disciplinary evaluation; that Parents took no responsibility; that Parents did not seem to appreciate the severe psychological impact that LKS had experienced; and that Parents are "simply not capable of recognizing even a need

-4-

for counseling and for change in their lifestyle and life habits." Dr. Donelson testified that Mother blamed LKS for the sexual abuse by Father's brother; that Father had a history of physical abuse including whipping DS and burning LKS; and that Parents had made no progress. Dr. Donelson recommended the removal of LKS, Brandon, and LKS's young child from the household. Dr. Bertram's testimony was similar. He testified that Parents had "shown no evidence at all . . . that [they] could adequately . . . marginally parent Brandon."

The trial court found that Mother testified, on one hand, that she felt "responsible," but that she also testified that there had been no sign of inappropriate behavior in the home. The court stated,

> When she testified about denial of physical abuse of any child, again the Court observed that she cocked her head over, and there was a smirk on her face that transmitted an attitude of defiance and rejection of authority and instruction.

The trial court also found that Father "flat out denied that his two children had shared a bedroom in the sense of a sexual relationship," and that Father asserted that the case worker was "coaching" LKS. The trial court found that DCS had established persistence of conditions under Tennessee Code Annotated § 36-1-113(g)(3) and severe child abuse under Tennessee Code Annotated § 36-1-113(g)(4) as defined in section 36-1-102, as grounds for termination.

Upon review of the record, the evidence supports the findings and conclusions of the trial court. In addition to the specific findings of the trial court, we note that Dr. Bertram testified that LKS was "one of the most depressed seeming teenagers [that he had] ever seen . . . in eight and a half years." He stated that it was clear that she "had gotten the message" from Mother that "she was responsible for the family's problems" because of her pregnancy. Dr. Bertram stated Parents had "neglected" to bring Brandon with them for their first appointment, and that LKS had been responsible for caring for Brandon and her "medically fragile" baby since the baby was discharged from the hospital. When asked whether he believed LKS had been emotionally abused by Parents, Dr. Bertram testified, "Yes, I do." Dr. Bertram testified that there had been a pattern since "at least 1992" of "complete and total lack of responsibility . . . even prior to LKS having been scalded at 23 months," when the family was first referred to DCS.

Dr. Bertram testified to "a complete and total lack of insight, lack of any awareness or any acceptance of blame as to what has happened to [Parents'] children." He testified that Brandon had expressed being happy in his foster home and that he wanted to remain there. Dr. Bertram further testified that Parents had "very marginal parenting skills," and that "they seem[ed] to believe and seem to still believe that their obligations as parents stop at providing

shelter and food and clothing." He stated that there seemed "to be a very clear pattern . . . of just neglect, gross neglect of emotional needs and a pattern of physical abuse starting from the scalding of LKS or possibly before[.]" Dr. Bertram stated that the prognosis for Parents to change their pattern was "poor." Dr. Bertram testified that there had been no improvement despite therapy. He further testified that, even if Parents complied with all the recommendations, there was little hope for improvement because Parents "externaliz[ed] all the blame" to the children. When asked whether he "[saw] much hope of that pattern changing," Dr. Bertram testified, "No." When asked whether Brandon himself was abused or neglected, Dr. Bertram testified, "At least neglected. . . . I do feel that he was neglected very much."

The trial court terminated Parents rights based upon Tennessee Code Annotated § 36-1-113(g)(3) and (4). The Code provides, in relevant part:

> (g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:
> . . . .
> (3) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
> (A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;
> (B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and
> (C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home;
> (4) The parent or guardian has been found to have committed severe child abuse as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse against the child who is the subject of the petition *or against any sibling or half-sibling of such child*, or any other child residing temporarily or permanently in the home of such parent or guardian[.]

Tenn. Code Ann. § 36-1-113(g)(3) & (4)(2010)(emphasis added). Upon review of the record, we agree with the trial court that clear and convincing evidence establishes that Brandon was dependent and neglected. We also conclude that grounds for termination of Parents' parental rights based on persistence of conditions and severe abuse have been established by clear and convincing evidence in this case.

In their brief to this Court, Parents assert DCS failed to make reasonable efforts. They assert that they complied with the tasks under the parenting plan, but that DCS failed to supply them with sufficiently intense therapy or counseling. DCS has made "reasonable efforts" where, in "the exercise of reasonable care and diligence" it has "provide[d] services related to meeting the needs of the child and the family." Tenn. Code Ann. § 37-1-166(g)(1)(2010). Whether DCS has made reasonable efforts to provide services to enable a child to return safely to the home must be decided on a case-by-case basis in light of the circumstances of the case. *In the Matter of: C.M.C., C.L.C., and D.A.M.*, No. E2005-00328-COA-R3-PT, 2005 WL 1827855, at *9 (Tenn. Ct. App. Aug.3, 2005)(*no perm. app. filed*). When determining whether DCS has made reasonable efforts, the court may consider factors such as: (1) the reasons for separating the parent from his or her child or children, (2) the parent's physical and mental abilities, (3) the resources available to the parent, (4) the parent's efforts to remedy the conditions that required the separation, (5) the resources available to the Department, (6) the duration of the parent's remedial efforts, and (7) the closeness of the fit between the conditions that led to the initial separation, the requirements in the permanency plan, and the Departments efforts. *Id.*; *In the Matter of: C.M.M. & S.D.M.*, No. M2003-01122-COA-R3-PT, 2004 WL 438326, at *7 (Tenn. Ct. App. Mar.9, 2004)(*no perm. app. filed*). Clearly, parents also must make reasonable efforts to substantially comply with the requirements of the permanency plan and to rectify the conditions that led to the child's removal. *In the Matter of M.A.B, D.C.M, M.A.M, M.I.M, D.Z.M and W.M.E.M*, No. W2007-00453-COA-R3-PT, 2007 WL 2353158, at *5 (Tenn. Ct. App. Aug. 20, 2007).

Parents do not contend that DCS has not provided them with counseling or therapy. Rather, they assert that such counseling was not sufficiently intensive. In light of the entire record in this case, and particularly in light of he testimony of Dr. Bertram, whom the trial court found to be credible, it appears to us that Parents are simply unable to appropriately care for these children despite DCS efforts dating from 1993. We agree with the trial court that the conditions leading to Brandon's removal from Parents' care continue to persist, and they are unlikely to be remedied in the near future despite further counseling and therapy.

Upon review of the record, we also affirm the trial court's finding that termination of Parents' parental rights is in Brandon's best interest. As noted above, the record reflects that Brandon has been residing with his foster family since April 2008, and that he is happy and

thriving in his foster home. Further, Brandon's foster parents are willing and able to adopt him. We finally turn to Parents' assertion that the trial court erred in considering the report of the guardian ad litem. To the extent that the trial court may have so erred, any such error is harmless. The trial court clearly did not rely upon the report of the guardian ad litem, and did not make its findings based on the guardian ad litem's conclusions.

### *Holding*

In light of the foregoing, the judgment of the trial court is affirmed. Costs of this appeal are taxed to the Appellants.

_____
DAVID R. FARMER, JUDGE