IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 28, 2012 Session

IN RE: K.B. (D.O.B. 4/18/2001)
RONALD LYNN BREWER, JR., ET AL. v. RONALD LYNN BREWER, SR.,
ET AL.

Direct Appeal from the Chancery Court for Rutherford County
No. 11 CV-21      Robert E. Corlew, Jr., Chancellor

No. M2011-01396-COA-R3-PT - Filed July 31, 2012

This is a termination of parental rights case. The trial court concluded that it was in the best interests of the child to terminate Mother's parental rights on the ground of severe child abuse. On appeal, the sole issue presented by Mother is whether the trial court erred in determining that termination of her parental rights was in the best interests of the child. After thoroughly reviewing the record, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Amy Broom Pollina, Murfreesboro, Tennessee, for the Appellant, Sherry Lynn Brewer Johnson.

Tarsila Crawford, Nashville, Tennessee, for the Appellees, Ronald Lynn Brewer, Jr. and Samantha Jo Brewer.

**OPINION**

**I. Background and Procedural History**

Sherry Lynn Brewer Johnson ("Mother") and Ronald Lynn Brewer, Sr. ("Mr. Brewer, Sr.") were married in 1994. At the time of his marriage to Mother, Mr. Brewer, Sr. had a son from a previous relationship, Ronald Lynn Brewer, Jr. ("Mr. Brewer, Jr."). Shortly thereafter, on March 20, 1997, Mother gave birth to C.L.B.

On April 1, 2001, Mother gave birth to K.B., the minor child at issue in this case. In May 2004, Mr. Brewer, Sr. discovered that he was not K.B.'s biological father, and that at the time of K.B.'s conception, Mother was having a sexual relationship with his son, Mr. Brewer, Jr. At the time, Mr. Brewer, Jr. was only seventeen (17) years old. Thereafter, on January 2, 2005, Mother was convicted of incest and became a registered sex offender. Also in January 2005, Mr. Brewer, Sr. and Mother were divorced by a final decree entered by the Weakley County Chancery Court. Mother was later named the primary residential parent of K.B. and C.L.B.

In late 2005, the Department of Children's Services ("DCS") received allegations that Mother was dating a convicted sex offender. After informing Mother of these allegations, DCS created a safety plan which provided that Mother would not have the children around the sex offender. Mother testified that she ended the relationship and all contact with the man after entering into the safety plan. Shortly thereafter, however, Mother was found in violation of the safety plan by a DCS employee who visited and discovered the sex offender at Mother's home. As a result, the Weakley County Chancery Court named Mr. Brewer, Sr. the primary residential parent of K.B. and C.L.B., and provided Mother visitation of the children every other weekend and holidays.

Subsequently, in 2007, Mr. Brewer, Sr. moved K.B. and C.L.B. to Rutherford County. Mr. Brewer, Jr. and his wife, Samantha Jo Brewer ("Mrs. Brewer") (collectively as "the Brewers"), also relocated to Rutherford County. The purpose of the move was to provide the family an opportunity to escape the gossip and trauma that they experienced in Weakley County as a result of Mother's incest conviction. The Brewers, with the help of Mr. Brewer, Sr., began to assimilate K.B. into their lives as their son. Eventually, the Brewers moved K.B. into their home once he understood that Mr. Brewer, Jr. was his biological father. Although K.B. and C.L.B. lived in Rutherford County, Mother continued to visit and pay child support.

On January 6, 2011, the Brewers filed a Petition to Terminate Parental Rights and for Adoption in the Chancery Court of Rutherford County. The Brewers' petition alleged that termination of Mother and Mr. Brewer, Sr.'s parental rights was in K.B.'s best interests. As grounds for termination, the Brewers alleged that Mother committed severe child abuse against a sibling of K.B., or a child residing temporarily in Mother's home, based on the incestuous relationship Mother had with her stepson, Mr. Brewer, Jr., who at the time was a minor. The Brewers further alleged that, because Mother was emotionally manipulative and a sexual predator, she posed a substantial risk of harm to the psychological welfare of K.B., and they were fearful that she would commit the same acts with K.B. as she did with Mr. Brewer, Jr. when he was a minor.

The trial court conducted a hearing on the termination petition on March 3 and 10, 2011. The evidence presented to the trial court consisted of testimony from Mr. Brewer, Sr., Mr. Brewer, Jr., Mother, C.L.B., and Mrs. Brewer.

First, Mr. Brewer, Sr. testified regarding the incestuous relationship Mother had with Mr. Brewer, Jr. during their marriage and the effects it had on the family. Mr. Brewer, Sr. stated that Mother favors K.B. and tries to separate him from C.L.B. when they visit her in order to spend more time alone with K.B. Mr. Brewer, Sr. further stated that Mother often times sleeps in the same bed with K.B. Moreover, Mr. Brewer, Sr. described the efforts he and the Brewers made over a period of five years to relocate and assimilate K.B. into the Brewers lives as their son. Since K.B. now understands that Mr. Brewer, Jr. is his biological father, Mr. Brewer, Sr. believes he is well-adjusted and is truly enjoying living with the Brewers.

Next, Mr. Brewer, Jr. described Mother's inappropriate behavior towards him beginning when he was in the eighth grade, which gradually escalated to the incestuous relationship in 2000. Mr. Brewer, Jr. stated that he sees many similarities between the way Mother treats K.B. and the way she treated him in the past before she abused him. In light of these observations, Mr. Brewer, Jr. fears Mother will abuse K.B. in the same manner. Mrs. Brewer shared these same concerns, and further testified that Mother often purchased gifts for K.B. that she felt were inappropriate for a child, including cologne, men's body wash, and deodorant. Furthermore, Mrs. Brewer testified that K.B. is quiet and seems distant when he returns from visiting Mother. On the other hand, Mr. Brewer, Jr. testified that K.B. is well-adjusted, is thriving in the Brewers' care, and loves living in their home. Mrs. Brewer also described K.B.'s current environment living in the Brewers' home. Mrs. Brewer stated that K.B. loves being the big brother of the Brewers two younger children, and that he fits perfectly into their family.

Thereafter, Mother testified that, despite Mr. Brewer, Sr. and the Brewers relocating to Rutherford County, she continued to visit and pay child support. Mother further stated that she has made numerous improvements in her life since she was convicted of incest. Mother remarried in 2009, and is currently fostering a relationship with her stepchildren and grandchildren. Also, Mother participates in a relapse prevention program for sex offenders. Ultimately, Mother stated that she should no longer be considered a danger because she has not engaged in any sexual acts with a minor or family member since her incestuous relationship with Mr. Brewer, Jr.

Finally, the trial court heard the testimony of C.L.B., who at the time of the hearing was thirteen (13) years old. C.L.B. described the favoritism Mother exhibits toward K.B. C.L.B. stated that Mother buys K.B. more heart-felt, expensive gifts and is nicer to K.B.

Moreover, C.L.B. stated that when he and K.B. visit Mother, she often separates them in order to spend more time alone with K.B.

At the conclusion of the hearing, the trial court issued an oral ruling terminating Mother's parental rights after finding clear and convincing evidence of severe child abuse and that termination was in K.B.'s best interests. Mr. Brewer, Sr. consented to the termination of his rights as K.B.'s legal father. Thereafter, on May 25, 2011, the trial court entered a written order memorializing its earlier ruling. Mother timely filed a notice of appeal to this Court.[1]

## II. Issue Presented and Standard of Review

On appeal, Mother concedes that clear and convincing evidence existed to establish the ground of severe child abuse. *See* Tenn. Code Ann. § 36-1-113(g)(4) (2010).[2] Therefore, the sole issue for our review is whether the evidence presented to the trial court clearly and convincingly established that it was in the best interests of K.B. to terminate Mother's parental rights.

We review a trial court's findings of fact *de novo* upon the record, according a presumption of correctness to the findings unless a preponderance of the evidence is to the contrary. Tenn. R. App. P. 13(d); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citation omitted). No presumption of correctness attaches to a trial court's conclusions of law. Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn.2000) (citation omitted). We will not reevaluate the determinations of a trial court based on an assessment of credibility unless clear and convincing evidence is to the contrary. *In re M.L.D.*, 182 S.W.3d 890, 894 (Tenn. Ct. App. 2005) (citation omitted). Furthermore, where the trial court has not made a specific finding of fact, we review the record *de novo*. *In re Valentine*, 79 S.W.3d at 546 (citation omitted).

---

[1] As noted above, Mr. Brewer, Sr. consented to the termination of his rights as K.B.'s legal father. Further, Mr. Brewer, Sr. did not file a notice of appeal in this matter. Therefore, the scope of our discussion is limited to Mother's parental rights.

[2] Tennessee Code Annotated section 36-1-113(g)(4) provides a ground for termination if:

> The parent or guardian has been found to have committed severe child abuse as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse against the child who is the subject of the petition or against any sibling or half-sibling of such child, or any other child residing temporarily or permanently in the home of such parent or guardian; . . . .

Tennessee Code Annotated section 36–1–113 governs the termination of parental rights. This provision of the Code provides, in pertinent part:

> (c) Termination of parental or guardianship rights must be based upon:
>> (1) A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and
>> (2) That termination of the parent's or guardian's rights is in the best interests of the child.

Tenn. Code Ann. § 36–1–113(c)(1), (2) (2010). This two-step analysis requires appellate courts to consider "whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence." *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006). "Although the 'clear and convincing evidence' standard is more exacting than the 'preponderance of the evidence' standard, it does not require the certainty demanded by the 'beyond a reasonable doubt' standard." *In re M.A.B.*, No. W2007–00453–COA–R3–PT, 2007 WL 2353158, at *2 (Tenn. Ct. App. Aug. 20, 2007) (citation omitted). "Clear and convincing evidence is evidence that eliminates any substantial doubt and that produces in the fact-finder's mind a firm conviction as to the truth." *Id.* (citation omitted).

The heightened burden of proof in parental termination cases requires us to distinguish between the trial court's findings with respect to specific facts and the "combined weight of these facts." *In Re: Michael C. M.*, No. W2010–01511–COA–R3–PT, 2010 WL 4366070, at *2 (Tenn. Ct. App. Nov. 5, 2010) (quoting *In Re: M.J.B .*, 140 S.W.3d 643, 654 n.35 (Tenn. Ct. App. 2004)). Although we presume the trial court's specific findings of fact to be correct if they are supported by a preponderance of the evidence, we "must then determine whether the combined weight of these facts provides clear and convincing evidence supporting the trial court's ultimate factual conclusion." *Id.*

### III. Analysis

Termination of parental rights is appropriate only if clear and convincing evidence establishes that eliminating those rights is in the best interests of the child named in the petition. Tenn. Code Ann. § 36–1–113(c)(2). Courts consider the following non-exhaustive list of factors when determining the best interests of a child:

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36–5–101.

Tenn. Code Ann. § 36–1–113(i)(1)–(9). "Every factor need not be applicable in order for the trial court to determine that it is in the best interest of the child for a parent's right[s] to be terminated." *In re D.C.A.*, No. M2008–01279–COA–R3–PT, 2009 WL 837877, at *8 (Tenn. Ct. App. Mar. 30, 2009) (*no perm. app. filed*). The weight and relevance of these factors may vary from case to case and it is possible that a single factor is determinative. *Id.* (citing *In re Audrey S.*, 182 S.W.3d 838, 878 (Tenn. Ct. App. 2005)). In evaluating the issue of best interests, the court must remember that any conflict between the best interests of a child and the adult parent "shall always be resolved to favor the rights and the best interests of the child . . . ." Tenn. Code Ann. § 36–1–101(d).

In the case at bar, the trial court concluded that termination of Mother's parental rights was in the best interests of the child for a number of reasons. Specifically, the trial court's final order terminating Mother's parental rights provides:

The Court finds by clear and convincing evidence, that [Mother] has been convicted of the crime of incest and it is further undisputed that the minor child is the product of that incestuous relationship with Ronald Lynn Brewer, Jr. The Court finds by clear and convincing evidence, that at the time of conception, Mr. Brewer, Jr. was in fact a minor and under the law he was presumptively unable to consent to the relationship and, therefore, did not consent to the relationship. Therefore, the Court finds by clear and convincing evidence that the incestuous relationship does constitute severe abuse as defined in Tenn. Code Ann. § 37-1-102 and [Mother]'s parental rights can be terminated under Tenn. Code Ann. § 36-1-113(g)(4).

The Court further finds by clear and convincing evidence that it is in the best interests of the minor child that [Mother]'s parental rights be terminated. The Court finds that [Mother] was convicted of incest, that [Mother] is listed on the sex offender registry, and that there were multiple encounters between [Mother] and Mr. Brewer, Jr. Furthermore, the Court finds that a child protection plan was in place allowing [Mother] parenting time with the minor children but [Mother] violated that protection plan and the children were removed from her primary custody because her boyfriend . . . was a convicted sex offender and he was found on her property. The Court finds that Mr. Brewer, Jr. and his wife, [Mrs. Brewer], hope to establish a stable home for the minor child and provide an opportunity in Rutherford County to get away from some of the trauma that the family experienced in Weakley County. Therefore, based on these findings, the Court finds that the clear and convincing evidence does support that it is in the minor child's best interests to terminate the parental rights of [Mother].

After thoroughly reviewing the record, we find no error in the trial court's conclusion that termination of Mother's parental rights was in the best interests of the child. While we are mindful of Mother's efforts to turn her life around, at this point in the proceedings, our focus is on K.B.'s best interests, not Mother's. It is undisputed that Mother was convicted of incest for the numerous sexual encounters she had with Mr. Brewer, Jr., who at the time was her minor stepson. In fact, in her brief to this Court, Mother attempts to minimize the severity of the incestuous relationship, stating that Mr. Brewer, Jr. was only her "step-son, not a blood relative" and that it was only "termed 'abuse' because at the time [Mr. Brewer, Jr.] was a minor, just shy of 18, but by his own testimony he was never 'forced' into anything." While Mother's statements illustrate her inability to grasp the severity of her incestuous behavior, the rest of the family, most importantly K.B., continues to suffer the repercussions of those actions.

-7-

Additionally, it is undisputed that Mother is a registered sex offender, and that she violated the safety plan put in place by DCS when she allowed another sex offender to be in the presence of the children while in her custody. Moreover, Mother conceded at trial that her current husband is a convicted felon. On the other hand, the Brewers have provided K.B. with a safe, loving, and stable home. Furthermore, as exemplified by the steps the Brewers have taken to eradicate the family's unfortunate legacy in Weakley County from K.B.'s life, this change of caretakers undoubtedly has and will continue to have a positive effect on K.B.'s psychological and emotional well-being. Accordingly, we hold that K.B.'s best interests strongly support termination of Mother's parental rights.

## IV. Conclusion

For the forgoing reasons, we affirm the judgment of the trial court. Costs of this appeal are taxed to the Appellant, Sherry Lynn Brewer Johnson, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE