IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 3, 2016

**IN RE ELIAS Mc.**

**Appeal from the Circuit Court for Sumner County**
**No. 2014CV628     Joe Thompson, Judge**

_____

**No. M2015-01202-COA-R3-PT – Filed July 20, 2016**
_____


Petitioners sought to terminate the parental rights of both parents. After a trial, the court found that the grounds of wanton disregard, abandonment by willful failure to visit, and abandonment by willful failure to pay support did not exist as to the father. Petitioners took a voluntary dismissal as to the mother. Petitioners appealed the trial court's decision as to the father. We affirm the trial court's judgment.

**Tenn. R. Civ. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and CHARLES D. SUSANO, JR., J., joined.

Patti B. Garner, Gallatin, Tennessee, for the appellants, Brenda C., and Robert E.

Bruce N. Oldham, Gallatin, Tennessee, for the appellee, Jeremy Mc.


**OPINION**


Elias Mc.[1] was born in 2002 from a relationship between Destiny C. ("Mother") and Jeremy Mc. ("Father"). Mother last lived with Father when the child was about three years old. After issues with truancy and the loss of her residence, Mother asked Father to allow the child to live with him during the 2010-2011 school year. Father agreed. Elias did well that school year, when he was in the second grade. After the school year ended, the child went to

_____

[1] In cases involving a minor child, it is this Court's policy to redact names in order to protect the child's identity.

visit Mother and never returned to live with Father.

In May 2012, Mother's great-grandparents, J. B. and Shirley L., acquired custody of the child by order of the Sumner County Juvenile Court. They obtained custody without notice to Father. After learning that the great-grandparents had custody of Elias, Father filed a petition for custody in June 2012. After Brenda C., the child's grandmother, filed for custody, the child was eventually placed with her in June 2013.

On June 12, 2014, Brenda C. and Robert E., Elias's maternal grandmother and her longtime boyfriend, ("Appellants"), filed a petition to terminate the parental rights of both Mother and Father. Their amended petition, filed on March 25, 2015, created some confusion because it contained matters not mentioned in their motion to amend. The trial court ruled:

> [a]ny parts of [the] amended petition that are inconsistent with the motion to amend dated December 23rd are struck. You laid out in your motion to amend that you wanted to add certain historical information, you had three paragraphs.
>
> So you're limited to your original petition and any information or any pleadings in proof consistent with the three paragraphs with your motion to amend.

The hearing in this matter occurred on May 20, 2015. The trial court, in effect, dismissed the ground of wanton disregard, stating, "So because we don't have that incarceration for the four-month period, there's no reason for any proof to be put on that matter." The trial court also eventually found that the grounds of abandonment by willful failure to visit and abandonment by willful failure to pay support did not exist.[2] The petitioners appealed.

### STANDARD OF REVIEW

The standard for appellate review of parental termination cases was recently reiterated by the Tennessee Supreme Court:

> An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence

---

[2] The petitioners took a voluntary dismissal as to Mother.

- 2 -

preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

*In re Carrington H*., 483 S.W.3d 507, 523-24 (Tenn. 2016) (citations omitted), *petition for cert. filed sub nom. Vanessa G. v. Tenn. Dep't of Children's Servs*., No. 15-1317 (U.S. Apr. 27, 2016).

ANALYSIS

For clarity and logic's sake, we have rearranged and rephrased Appellants' issues. The first issue we shall address is Father's testimony about what he was told by the child support office. There was confusion over how many child support orders Father was under and who he was to pay. He testified that "Ms. Judy McKeen at Child Support requested that I stop paying until these issues were resolved." There was no objection to Father's first mention of Ms. McKeen and her request. Later, when asked about having money taken from his employment check for child support, Father testified, "But to be truthful the whole time I've been working at Phoenix we've been in these court proceedings and I've been in touch with Judy McKeen, and she's asked me not to pay because of the ongoing litigation until these matters are resolved." There was no objection to this testimony. Still later, when asked whether he made child support payments in February, March, April, or May of 2014, the following exchange occurred:

THE WITNESS: No, sir. During this time we were in contact with Ms. Judy McKeen over there, my case worker, and she –

MS. GARNER: Your Honor, I would object to anything she said.

THE COURT: Okay. Hang on a second.

No, no, no. She's made an objection so I don't need to hear from you.

What's your response to that, Ms. Frost?

MS. FROST: Well, he's already testified three or four times what was said.

- 3 -

And I would say I don't know what her objection is, but if it's hearsay, he's not even offering it for the truth of the matter asserted. He's saying his conduct was based on what they told him. And I believe that's true, Your Honor.

THE COURT: I thought she did say hearsay. And if he's not offering it for the truth of what she said but for the effect on him then it's certainly admissible for that limited purpose.

MS. GARNER: Judge, with all due respect, I traveled through Juvenile Court with this man –

THE COURT: Overruled. Overruled. He can testify to what she said because it doesn't matter whether it's true or not. He's saying I didn't pay because she told me this.

MS. GARNER: I think it's pretty clear that it's the four months before that controls. He either did or he didn't. If he didn't pay, there you have it.

THE COURT: Well, no, that's not the end of the equation. It's willful. And willful is not just that he didn't pay. There's several components whether it's willful.

So you're telling me the only reason you didn't pay during those months is because you were given advice by a Child Support Services worker?

THE WITNESS: Yes. Ms. Judy McKeen. I had my license revoked -- a letter came in the mail saying my license was going to be revoked. I took it to Ms. Judy McKeen. She told me to ignore it, that she had all three cases, that she was going through it with the DA to shut the cases down, and it would be handled.

I have yet –

MS. GARNER: Judge, I renew my objection.

THE COURT: And you're telling me that's why you didn't pay?

THE WITNESS: Yes, sir. By order of Ms. Judy McKeen. I thought she was able to tell me not to pay. I was misinformed. I thought she had the power to tell me to hold off.

A subsequent reference to Ms. McKeen and what she told Father was objected to and the

objection was overruled for the same reason. A final reference to what Ms. McKeen told Father occurred without objection:

> Q. So you kept getting letters. I think I heard when your lawyer was asking questions, every month from the State?
>
> A. Yes.
>
> Q. They all claimed you owed money?
>
> A. Yes, sir.
>
> Q. And one of them I saw said $17,000. One of them.
>
> A. Yes, sir. It's been compounded.
>
> Q. They said you owed a lot of money, but the lady from the state she told you were overpaid?
>
> A. Right. Ms. McKeen said due to the – how do I say it? Due to how messed up my case was they showed I should be receiving money back from Destiny and I overpaid on her and that right now I needed to stop and let them figure out where we're at and close those accounts.

"The failure to make a timely, specific objection to the trial court prevents an appellant from challenging the introduction of evidence for the first time on appeal." *Berry v. City of Memphis*, No. W2014-01236-COA-R3-CV, 2015 WL 1650763, at *2 (Tenn. Ct. App. Apr. 13, 2015)(citing *Ehrlich v. Weber*, 88 S.W. 188, 189 (Tenn. 1905)); *see also In re R.C.V.*, W2001-02102-COA-R3-JV, 2002 WL 31730899, at *8 (Tenn. Ct. App. Nov. 18, 2002) ("Failure to object to evidence in a timely and specific fashion precludes taking issue on appeal with the admission of evidence."). Furthermore, the admission of evidence is governed by the abuse of discretion standard. *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004). A trial court abuses its discretion by applying an incorrect legal standard or reaching an illogical or unreasonable decision that causes an injustice to the complaining party. *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). We find no abuse of discretion here.

In approximately one and one half pages of argument, Appellants' brief maintains that the grounds of wanton disregard and abandonment by failure to support were proven.

Wanton disregard is a form of abandonment in which:

[a] parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child;

Tenn. Code Ann. § 36-1-102(1)(A)(iv). The statute "begins by describing the class of people to whom the statute applies." *In re Audrey S.*, 182 S.W.3d at 870. The statute only applies where the parent "is incarcerated at the time of the institution of an action" or "has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action." Tenn. Code Ann. § 36-1-102(1)(A)(iv). The petition to terminate Father's rights was filed on June 12, 2014. There is no evidence that Father was incarcerated at the time of the institution of the action, nor is there evidence that he was incarcerated during all or part of the four months preceding the institution of the action. Therefore, Father was not included in the class of people to whom the statute applies, and the trial court did not err in failing to terminate his rights on the ground of abandonment by wanton disregard.

As for the ground of abandonment by failure to pay support,[3] Tenn. Code Ann. § 36-1-102(1)(A)(i) states:

For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child.

The record is clear that Father had made no child support payments since the end of 2012, so the four-month period is established. There is some suggestion in the record that he intended his tax intercepts to be his payments,[4] but he was ordered by the Sumner County Juvenile

---

[3] Appellants did not raise an issue on appeal about the trial court's decision on abandonment by failure to visit.

[4] A tax intercept is not a voluntary payment. *See In re Kadean T.*, No. M2013-02684-COA-R3-PT,

Court to pay a monthly amount of $365 to the Central Child Support Receipting Unit beginning November 1, 2013, that he did not pay. Based on his tax returns, which were placed in evidence, Father's estimated 2014 adjusted gross income was $37,104, his 2013 adjusted gross income was $36,260, and his adjusted gross income for 2012 was $21,715.

The question becomes whether the failure to pay support was willful. A parent's "'[f]ailure to support a child is 'willful' when a person is aware of his or her duty to support, has the capacity to provide the support, makes no attempt to provide the support, and has no justifiable excuse for not providing the support.'" *In re M .L.D.*, 182 S.W.3d 890, 896 (Tenn. Ct. App. 2005) (quoting *In re Adoption of T.A.M.*, No. M2003-02247-COA-R3-PT, 2004 WL 1085228, at *4 (Tenn. Ct. App. May 12, 2004)). Father knew of his support obligation, had the income with which to pay the support, and did not do so. The trial court found that:

> 1) due to the ongoing litigation of the custody matter in Juvenile Court, and 2) the testimony of the Father regarding his confusion surrounding the payment of support through Child Support Services; looking at the totality of the facts surrounding Father's pattern of fully litigating these matters regarding the minor child and that he was attempting to find out what he owed and to whom he owed it, and it further appearing the Father to be credible and legitimately confused, the Court finds that his failure to pay support was not willful and therefore the Petitioners have not carried their burden of proving abandonment [by failure to support] by clear and convincing evidence.

In their one-paragraph argument that the court's credibility determination was in error, which is totally devoid of citation to legal authority, Appellants emphasize Father's criminal record and other errors in his testimony. A trial judge's determination of credibility is given great weight. *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). This is because the trial judge actually views the witness as he or she testifies. Appellate judges merely read the words on a page. Consequently, only clear and convincing evidence can overturn a trial judge's finding of credibility. *Id.* That is a heavy burden of proof for Appellants to meet and, indeed, they have not met that burden in this matter. Furthermore, there is ample evidence to support the trial court's findings that there was legitimate confusion over the payments, and that there was an absence of willfulness in Father's failure to pay.

## CONCLUSION

The decision of the trial court is affirmed. Costs are taxed to the appellants, for which execution may issue if necessary.

2014 WL 5511984, at *6-7 (Tenn. Ct. App. Oct. 31, 2014).

_____
ANDY D. BENNETT, JUDGE